Our final case for argument this morning is Thorpe v. Dudek. Good morning, Your Honors. Mr. Tarloff. Good morning, Your Honors. May it please the Court, on behalf of the appellant Donald Thorpe, I would like to reserve two minutes for rebuttal. The reason that this case is different than the Schmitz case is because there are material factors that were evident in the Schmitz record that are not evident here. Mainly, a methodology that was reliable enough, based on the vocational expert testimony, for the Court to understand the source and general approach the vocational expert used in Schmitz. In this case, there is no general approach on the face of the record. Let's get the basics settled. You agree with the Social Security Administration that the vocational expert was not questioned at the hearing along the lines of your brief? I do agree with that, Your Honor. All right. Is there any case in which either the Supreme Court or this Court has allowed someone who never questioned the vocational expert to complain about the vocational expert's methodology? There has never been a case where a person complained about the methodology and the methodology was not accompanied by substantial evidence or a reliable method. The Supreme Court said in BSTEC that if there was no question, then it would be substantial evidence. And although that might be dismissed as dictum, Justice Sotomayor, although dissenting, made that point explicit. She said if there had been no questioning, then obviously there can't be a problem. So it looks like you're asking us to depart from both BSTEC and the law of this circuit. So what I asked was, do you have any legal support elsewhere? Am I missing something else? I think the support is in Fetting and Runger and Liskowitz and Lieskang and Donahue and every case that has come before that says when an ALJ rests the decision upon the testimony of a vocational expert, on the face of the testimony, there must be a product of a reliable method so that a reasonable... I don't think you're addressing my question. So, for example, in Fetting... What face do you rely on for the proposition? In Fetting, there was no objection. I give up. I rely on the proposition for one that has come out since this case started, which is 24-3P. What was your case again? I'm sorry. Which case am I relying on? I'm not on a case. I'm relying on the Social Security regulation, which came out... The one issued in December and not retroactive. Right. Well, it's not retroactive to apply to the case, but the reasoning as to what was entailed under... Regulations do not apply retroactively. So we don't redo this case because of what the Social Security Administration said in December. You need regulation effective at the time of the hearing or some judicial authority, and that's why I was asking what case you rely on for the proposition, that even though there is no question asked to the vocational expert at the hearing, the court can engage in some kind of independent analysis of the testimony. I don't know that you understand the reason for this requirement, which is if a question is asked at the hearing, the vocational expert is apt to explain in a way that will satisfy the doubts. But if the vocational expert is never asked, you don't get the supplemental explanation. Right. But in these hearings, unlike in an adversarial proceeding, the burden of proof and persuasion is on the commissioners. So then you must be able to find some case saying that we can examine it, even though the question is never asked, and then we'll overrule Smith, and we can proceed in your favor. But I don't know of such a case. Do you? Well, sir, I think Overman and Prochaska have said that when there is a conflict that would be apparent, whether or not it was addressed at the hearing. As I said, I give up. You're not dealing with my question. I do see an additional issue. Thank you for your 28-J letter telling us about this new regulation. In addition to the issues that my colleagues have raised, even 24-3 still talks about how important it is for the claimant's lawyer to ask questions. If you look at page 10 of 12 in this new regulation, it says, at the hearing level when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the V.E.'s testimony at the time of the hearing and to assist in developing the record through appropriate questions to the V.E. So then and now there is still an expectation obligation for the attorney to ask the questions about what this V.E. is saying and to develop the record. That hasn't changed. Absolutely. However, Schmitz was not decided solely on the fact that the attorney's silence as to the source and method was the reason because the court did not say, had Schmitz been pro se it would be a different activity. And I think still, even when a claimant is represented in a Social Security hearing by counsel, the ALJ still has a duty to develop a full and fair record. But there has to be some indicia. That's what we're getting to. There has to be some indicia of unreliability. That's what Schmitz said. Correct. And so you seem to suggest from your briefing that the testimony is unreliable because there is a conflict between the vocational expert's estimates and the Dictionary of Occupational Titles. My briefing for this case tried to raise the issue that there's an evidentiary gap in the Step 5 testimony as to where the numbers come from. Let me try it again. So are you disagreeing that in your brief your argument is that there is a conflict? Under 004P, correct. Yes. Is your contention that there is a conflict between the vocational expert's estimate and the Dictionary of Occupational Titles? Yes, Your Honor. Was that argument not rejected in Schmitz? Well, the Schmitz court said that it would be an abstract possibility and that because of that abstract possibility it does not rise to conflict under 004P. But 24.3P clarified that under 004P there was an obligation to both identify and resolve information that a vocational expert brings into the record that differs from information in the DOT. And the Schmitz court clarified that the DOT is not a source of jobs. Could you use real words, please? Sure. I apologize. The DOT stands for the Dictionary of Occupational Titles. Yes, just use real words, please. Sure. Absolutely. So the Schmitz court clarified that the only source mentioned in this THORP record cannot be a source of jobs. And in the Schmitz case what happened was after being asked for a set of jobs at the exertional level with similar non-exertional limitations that existed in this case, the judge then asked at an exertion level down with the same non-exertional limitations. And the vocational expert in Schmitz said there are jobs and gave job numbers. In this case, when the judge asked for an exertion level down with the same non-exertional limitations, the job expert said there are no jobs. And it was in the Schmitz case when the vocational expert started to make job erosions at the lower level down where the court was able to understand enough about the process that they did penalize Schmitz's counsel for not raising. What would have put this ALJ on notice that these numbers were unreliable? 004P would have put the ALJ on notice, and every single case that Schmitz cited besides Schmitz would have put the ALJ on notice that the DOT does not contain job numbers. Your Honor, I would like to reserve the rest of my time for rebuttal. Certainly, counsel. Ms. Hugo. Your Honors, may it please the Court. Megan Hugo on behalf of the Acting Commissioner. As the Court has recognized, in order to rule for Mr. Thorpe today, the Court would have to ignore the Supreme Court's decision in BSTEC and the Court's finding that even if an applicant demands the underlying data, an expert refuses, that can still be substantial evidence. I don't see how Mr. Thorpe can get around that point in BSTEC. Even as Judge Easterbrook pointed out, even the dissenters in BSTEC seem to recognize that absent some sort of demand, a bare conclusion could be sufficient. The Court in BSTEC also said there are no categorical rules for establishing substantiality of an expert's testimony. Mr. Thorpe is essentially saying in this case is the vocational expert always has to identify their sources. That completely contradicts the holding in BSTEC that there cannot be categorical rules. And as the Court also recognized, the Court would have to overrule Schmitz, which it just issued in December. This case is essentially identical to Schmitz, and Mr. Thorpe has not shown why the Court should take the extraordinary step of overruling that case. How do you respond to Thorpe's argument that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles? That the vocational expert's testimony here was inconsistent? I don't know how there can be an inconsistency between the Dictionary of Occupational Titles and her job numbers because it's uncontested that the Dictionary of Occupational Titles does not contain job numbers. It's an impossibility that there would be a conflict on that point. To the extent that he's saying there was some hypothetical conflict between the vocational expert's testimony and any of the requirements of the jobs, as the Court pointed out, Schmitz forecloses that argument. I mean, the ALJ is not obligated to unearth some hypothetical abstract conflict. The ALJ in this case followed Social Security ruling 004P, which was the one in effect, by asking the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles. She said it was, with the exception of answers about absenteeism and off-task time, which were based on her experience. And was the credibility of the vocational expert questioned? It was not. There were several questions raised by counsel, none of which had to do with any of the job numbers or her process for estimating job numbers. There was no objection at the hearing that would have put the ALJ on notice if there was any issue with the job numbers. There was no post-hearing briefing. Again, this case is identical to Schmitz. The testimony was almost exactly the same. Counsel's attempt to distinguish Schmitz, I think, relies on a misreading of part of the Court's decision. The Court's decision in that regard was talking about the ALJ's response or, I'm sorry, the vocational expert's responses to additional hypothetical limitations reaching absenteeism and off-task time. And the vocational expert said for two of those limitations, presumably absenteeism and off-task time, the dictionary of occupational titles was not helpful, and she relied on her experience. That's exactly what happened here. Ms. Nalgan was asked about absenteeism and off-task time, and she said those answers were based on her professional experience. All of the factors that the Court found were markers of reliability in Schmitz with the vocational expert testimony are present here. Ms. Nalgan was well-credentialed. She answered all the questions that were posed to her. She based some of those on her professional experience. There was no objection. There was no barriers to cross-examination by counsel. Counsel simply chose not to ask any questions. So, you know, on its face, this was plausible, uncontradicted, and the ALJ was entitled to rely on it. If the Court has no further questions, the Commission. No, I have one question, which is not strictly relevant and is not about your client, but is the Department of Labor ever going to update the Dictionary of Occupational Titles? It is something of a joke by now. This occupational information system project has been ongoing for quite some time, and I understand the Court's frustration with how long it's been taking. It took only eight years to get to the moon. Why does it take forever to update the Dictionary of Occupational Titles? As I said, they're not your client, and I can't cross-examine you about it, but it would be nice if something happened. No, I agree. I think everyone's frustrated with the pace. It is in progress. The Bureau of Labor Statistics is still collecting data, and the agency is working on revised regulations and rulings that will allow it to use the new system versus the Dictionary of Occupational Titles, but unfortunately I can't speak to it now. Thank you. Thank you. Mr. Tallark, anything further? Yes, very briefly to finish up, Your Honors. As you were just discussing, because of the time it has taken for the Department of Labor to update the job base that they're using, as this Court outlined in the SOC v. Kijikazi case, the duty of the ALJ is to translate the jobs from the standard occupational classification system that is currently in use by the Department of Labor and show how they used a general approach to come up with those job notes. And the SOC case did not make that determination based on the cross-examination by the claimant. And the law has always said that in this case, when you have a Social Security claimant, particularly a disabled claimant, not a retiree, once they have made a prima facie case that they are unable to do their past work, the burden of proof shifts. And I ask Your Honors to remember that it's not just proof. It's also persuasion. And there were material factors that differentiated Schmitz from this case. The fact that the vocational expert walked through erosions in the record, and in the Schmitz case, according to the Court, the experience was in placing people in the jobs attested to. In this case, the only experience that was mentioned was just two absences and off-tasks, which were not any part of the hypothetical. And there was no talk about how the experience with estimating jobs was based on any experience, no source or method. Thank you very much, Your Honors. I appreciate it. Thank you. The case is taken under advisement, and the Court will be in recess until this afternoon.